**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| PEGGY M. MAPLE, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | 1:08-cv-469-SEB-DML |
| ) | |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**Entry Discussing Complaint for Judicial Review**

Peggy M. Maple ("Maple") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **remanded for further consideration.**

**I.  Background**

Maple filed an application for DIB on March 23, 2004, alleging an onset date of disability of September 20, 2003. Her application was denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted and a hearing was conducted on October 23, 2007. Maple appeared, accompanied by her attorney. Medical and other records were introduced into evidence. Maple, her husband, and a vocational expert testified at the hearing. The ALJ issued a decision on January 23, 2008, denying benefits. On February 26, 2008, the Appeals Council denied Maple's request for review, making the ALJ's decision final. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Maple met the insured status requirements of the Act through December 31, 2008; (2) Maple had not engaged in substantial gainful activity since September 20, 2003, the alleged onset date; (3) Maple had the following severe combination of impairments: post traumatic arthritis of the right ankle; right patellofemoral syndrome; right shoulder impingement syndrome; mild right lateral epicondylitis; obesity; major depressive disorder; and panic disorder with agoraphobia; (4) Maple did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Maple had the residual functional capacity ("RFC") to perform less than the full ranges of light and sedentary work, could continuously lift up to five pounds, frequently lift up to twenty pounds, and occasionally lift twenty-one to twenty-five pounds, could frequently carry up to ten pounds and occasionally carry up to twenty-five pounds, could frequently push and/or pull up to ten pounds and up to twenty pounds occasionally with the upper extremities; she could sit up to eight hours of an eight hour work day and stand and/or walk (in combination) a total of one hour of an eight hour work day; she had no limits on her ability to use her hands for repetitive actions such as simple grasping and fine manipulation; she was able to frequently reach; she was unable to use her right foot for repetitive movements such as pushing and/or pulling objects but she could use her left foot to push and/or pull objects without limits; she could occasionally bend, stoop and balance but could not squat, crawl, climb, kneel, or crouch; she should not work around unprotected heights, had no limits being around moving machinery, could not tolerate more than moderate exposure to dust, fumes, or gases, had mild limitations in being exposed to marked temperature changes, humidity, and driving automotive equipment; she should use a cane while standing and ambulating; she was limited to performing simple, routine, and repetitive tasks, she could make judgments that are commensurate with the functions of unskilled work, she could deal with changes in a routine work setting, she could respond appropriately to supervisors, co-workers, and usual work situations, and she was able to frequently interact with the public, co-workers, and supervisors; (6) Maple was unable to perform any past relevant work; (7) Maple was born on January 24, 1962, and was 41-years old, which is defined as a younger individual age 18-49, on the alleged disability onset date; (8) Maple had at least a high school education and was able to communicate in English, and did not have transferable job skills because she was limited to performing unskilled work; and (9) considering Maple's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Maple had not been under a "disability" as defined in the Act from September 20, 2003, through the date of the ALJ's decision.

## II.  Discussion

### A.  Applicable Law

To be eligible for DIB, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To establish disability, the plaintiff is required to present medical evidence of

an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. § 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id*. The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B. Analysis

In this case, the ALJ determined that Maple had a severe combination of impairments but she could perform a significant number of jobs in the national economy. Maple argues that the ALJ's decision is not supported by substantial evidence.

First, Maple contends that substantial evidence does not support the ALJ's finding that her combined obesity, leg/ankle/foot arthritis, right ankle deformity, neuropathy, neuromas, and chronic pain did not meet or equal Listing 1.02A (musculoskeletal).[1] The

---

[1] Listing 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

ALJ stated that she evaluated Maple's post traumatic arthritis of the right ankle, right patellofemoral syndrome, right shoulder impingement syndrome and mild right lateral epicondylitis under listings 1.02A and 1.02B. (R. at 15). The ALJ stated that "[t]he evidence does not demonstrate the gross anatomical deformity, . . . or ambulatory limitations required" under Listing 1.02A. *Id.*

Maple argues that treatment notes by Dr. Krauss in November 2003 reflect the necessary elements of Listing 1.02A. Dr. Krauss reported that Maple ambulated with an antalgic gait, could do a single heel rise on the right with great difficulty, had pain and numbness and moderate swelling in the foot, large fluid collection in the ankle joint, and a subchondral cyst in the talus. (R. at 258-59). The Commissioner responds that Maple had surgery a month later, in December 2003, and that medical records thereafter fail to document gross anatomical deformity or ambulatory limitations sufficient to meet Listing 1.02A. In her reply, Maple asserts that an orthopedic evaluation of March 17, 2004, by Dr. Krauss shows that Maple's pain was back to her previous level, she had tingling at the vein wrap site, and the neuritis of the posterior tibial nerve had returned. (R. at 251). Dr. Krauss opined that at three months status post surgery, Maple had "reached an endpoint" and she would not get much better than she was then. *Id.* Maple notes an evaluation on May 24, 2004, by Dr. Poplin, reporting that Maple had "very antalgic gait with fair stability, slow speed, and poor sustainability, . . . unable to walk on heels and toes" in addition to "right ankle and foot bone hypertrophy." (R. at 188). Maple further points out that on April 22, 2005, Dr. Poplin examined her and noted "very antalgic gait with poor stability, slow speed, and poor sustainability without the use of her cane, with the cane she had fair stability," limitations in range of motion, and "right ankle deformity with moderate hypertrophic bone changes." (R. at 147). Dr. Poplin further noted that Maple was unable to walk on heels and toes. *Id.* When discussing her RFC evaluation, the ALJ acknowledged treating physician Dr. Herbst's August 2007 opinion that Maple had "severe post traumatic right ankle arthritis - prevents normal-full activities, especially standing, walking ...," (R. at 18, 316), and yet the ALJ did not explain how such limitations would not support a finding at step three that Maple had an inability to ambulate effectively.

The court agrees that in the face of the evidence cited by Maple, the ALJ's conclusory statement that "[t]he evidence does not demonstrate the gross anatomical deformity, . . . or ambulatory limitations required" under Listing 1.02A is not supported by substantial evidence. Although the court cannot make a listing determination in the first instance, the ALJ has not articulated on what basis she determined that the consistent reports of ankle deformity and impaired ambulation did not satisfy the requirements of Listing 1.02A. The court cannot be confident that the ALJ considered the important evidence of record, nor can it trace the path of the ALJ's reasoning in evaluating whether Maple's impairments met that listing. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (an "ALJ must sufficiently

---

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

4

articulate his assessment of the evidence to assure us that [he] considered the important evidence . . . [and to enable] us to trace the path of [his] reasoning") (internal quotation omitted). In addition, the ALJ points to no evidence, including any medical expert, in support of her finding that Maple's impairments did not medically equal a listing. (R. at 15). *See Barnett v. Barnhart*, 381 F.3d 684, 670 (7th Cir. 2004) ("Moreover, as is evident from the perfunctory discussion of the listing, the ALJ never consulted a medical expert regarding whether the listing was equaled. Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue."). For these reasons, the ALJ's findings at step three are not supported by substantial evidence.[2]

In addition, Maple argues that the ALJ's credibility determination was patently erroneous because he failed to comply with SSR 96-7p. Maple contends that the ALJ improperly relied on objective medical evidence in rejecting her testimony. The ALJ noted that Maple testified that she experienced chronic and extreme foot pain and that she could only stand about ten minutes. (R. at 20). The ALJ stated that "[w]hile I do not doubt that the claimant has pain and discomfort associated with her impairments, the evidence fails to support the extreme limitations to which she testified." *Id.* The ALJ discussed the appropriate factors including daily activities, location, duration, frequency and intensity of pain, precipitating and aggravating factors, effectiveness and side effects of medication, and treatment other than medication. (R. at 19-21). *See* 20 C.F.R. § 404.1529(c).

Courts defer to an ALJ's credibility determination and overturn it "only if it is patently wrong." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). Unless an ALJ's credibility determination is unreasonable or unsupported, courts should rarely disturb such findings. *Id.* "[A]lthough an ALJ may not ignore a claimant's subjective reports of pain simply because they are not fully supported by objective medical evidence, discrepancies between objective evidence and self-reports may suggest symptom exaggeration." *Id.* Maple argues that the ALJ ignored evidence which corroborated her allegations of disability due to pain and inability to ambulate effectively. Such evidence, however, is not adequately identified by Maples as it relates to the ALJ's discussion of the various factors to be weighed in making the credibility determination. Given the high deference afforded to the ALJ's finding and Maple's general challenge to that finding, the court cannot overturn the ALJ's credibility assessment. On remand, however, if the analysis goes beyond step three, the ALJ shall

---

[2]Maple also argues that the ALJ's assessment of her obesity is not supported by substantial evidence and that the impact of her weight putting pressure on her impaired right leg, ankle and foot is "obvious." The ALJ noted that there is no listing for obesity, but she considered the evidence regarding Maple's weight in accordance with the provisions of Social Security Ruling 02-1p. (R. at 16). The ALJ noted Maple's height of 65.5 inches and weight of 227 pounds, but concluded that she found "no indication that the claimant's weight, either alone or in combination with any other condition, has given rise to an impairment of listing level severity." *Id.* On remand, the ALJ shall obtain medical opinion as to whether Maple's obesity increased the severity of her impairments such that it met a listing and/or imposed an additional and significant limitation of function.

reevaluate the record as supplemented, if supplemented, and build a logical bridge between the evidence and her findings as to Maple's credibility.

### III. Conclusion

For the reasons discussed in this Entry, the ALJ's conclusions are not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand).

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**


Date: 07/24/2009

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana